## TNNA BRENNAN v. STATE.

No. A-5241.  Opinion Filed Nov. 20, 1925.
(240 Pac. 1084.)

L. F. Robertson, for plaintiff in error.

The Attorney General and Chas. Hill Johns, Asst. Atty. Gen., for the State.

DOYLE, J.  The information in this case charged that in Woodward county, October 1, 1923, Thomas Gipson and Anna Brennan "did then and there willfully and unlawfully convey intoxicating liquor, to wit, one pint of whisky, from some place in the county of Woodward to the county attorney unknown, to another place therein, to wit, to a place about 80 rods west of the southeast corner of section 6, township 24 north, range 18 west I. M., in Woodward county."

On the separate trial of the defendant, Anna Brennan, the jury returned a verdict finding her guilty as charged in the information, and fixing her punishment at a fine of $50, and confinement in the county jail for 30 days. To reverse the judgment rendered on the verdict she has ap-

pealed to this court. The errors assigned question the sufficiency of the evidence to sustain the verdict.

Roy C. Robinson testified that on the date alleged he was on his way to a sale, and passed the defendants in his car; that Gipson was sitting in an open buggy, and Mrs. Anna Brennan was out on the north side of the road, where it crosses a canyon that had running water; that he told Del Clark, deputy sheriff, that he saw Mrs. Brennan by the side of the road in the canyon.

Del Clark testified that he had a commission as deputy sheriff; that he was at the Mayes sale, about 10 miles north of Mooreland; that Roy Robinson told him about seeing Mrs. Brennan and old man Gipson at the place described in the information, and with Everest Teters, deputy sheriff, he went to the place, and on the west bank of the canyon Teters found a quart jar of liquor by a fence post; that he observed a woman's tracks in the grass. That about 30 minutes later Mrs. Brennan and Gipson came down the road in a buggy. Gipson stopped the team after they got past the water, and Mrs. Brennan got out and started to where the jar was. That he beat her to it, and picked it up when she was about 8 feet from it. That they arrested the defendants and brought them to Woodward.

The third witness called by the state was the codefendant, Thomas Gipson. His testimony is as follows:

"My age is 67 years. I was working for Mr. Brennan, pulling broom corn. I went with Mrs. Brennan in a buggy to the Mayes' sale. Every time we would go down hill the traces would come unhooked, and in crossing the canyon I stopped to fix the traces. Mrs. Brennan said she wanted to get out. Then she went over on the north side of the road, and I drove on about 100 yards. After we had started on a car passed us. I did not see any liquor that day, and the only thing in the buggy was an oil can. When we were returning from the sale I stopped at the same place to water the team. Mrs. Brennan bought a rocking chair at the

sale. It was tied on the back of the buggy, and was about to jostle off, so I got out and took a hitch rein and tied it on again. She was standing by the side of the buggy, and the officers stepped up and pointed their guns at her and me. I did not see any whisky either before or after we were arrested."

On cross-examination he stated that he remained in jail for 150 days, and had been out about 2 weeks at the time of the trial; that he did not plead guilty or give bond; that the county physician reported that he was sick, and the county attorney let him out until this term of court.

C. E. Teters, deputy sheriff, testified in substance to the same facts as did the witness Clark.

The defendant, Mrs. Anna Brennan, testified that her age is 56 years. That she lives 10 miles northwest of Mooreland with her husband, and went to the sale with Thomas Gipson, who worked for her husband. That in the canyon just before they got to the mail boxes she got out of the buggy for a personal reason. Then they drove on to the sale, where she purchased a rocking chair, which was tied on the back of the buggy. On their return, when they stopped in the canyon to water the team and to better fasten the rocking chair, Mr. Teters jumped up and threw a gun on her, and said, "You are going with us." Mr. Gipson said, "We are not outlaws. You don't need a gun," and he would not let them water the team. That she did not have any whisky that day, and did not see Del Clark pick up a jar by the roadside.

In rebuttal, the witness Teters, recalled, testified that he did not display his gun to Mrs. Brennan; that Mrs. Brennan said she wanted to water her team, just using that as an excuse.

The foregoing is a substantial statement of all the material testimony in the case. It may be that the officer did not point his gun at the old lady, but it is an undisputed

fact that the officers arrested these defendants without a warrant, and there is no pretense that the offense charged was committed in their presence. The old man it appears remained in jail without a trial for more than 5 months. The state elected to proceed against the woman alone, and on the trial called her codefendant as a witness for the state. Under his testimony the offense charged was not committed, and no claim was made that the state was misled or surprised by his testimony, and no attempt was made to impeach him by proving former contradictory statements. The general rule is that the party calling a witness certifies to his credibility. Assuming as true the testimony of the officers to the effect that this defendant walked toward the place they found the fruit jar, that circumstance, with the other circumstances in evidence, is insufficient to make out a circumstantial case. If it was shown that this defendant had possession of the whisky in question or took it into her possession before her arrest, then it would be a case of circumstantial evidence.

In Brown v. State, 18 Okla. Cr. 509, 196 P. 967, we held that in a prosecution for conveying intoxicating liquors it is essential to sustain a conviction that the state prove the conveyance as alleged.

In the opinion it is said:

"A conviction based on surmise and suspicion of guilt should not be permitted to stand. Otherwise the liberty of the innocent citizen would be jeopardized."

Upon a consideration of all the evidence in the case, we are of the opinion that it is wholly insufficient to warrant a verdict of guilty, and for this reason the court erred in overruling the defendant's motion for a new trial.

The judgment of the lower court is reversed, and the cause remanded, with direction to dismiss.

BESSEY, P. J., and EDWARDS, J., concur.